AARON POLLARD *vs.* DANIEL BARNES & another.

A declaration may be amended, by leave of the court, by striking out a count, of which the court has no jurisdiction.

Where a plaintiff claimed an easement in land adjoining his mill, on the ground, that from the year 1822 to the year 1846, the premises had been used by him as a part of his mill yard, for the purpose of laying logs, lumber, and boards thereon; and evidence was introduced, on the part of the defendant, tending to show that from the year 1829 to the year 1834, both inclusive, no such use had been made of the premises; it was held, that the omission, if proved, would be such an interruption of the use as would prevent the plaintiff from acquiring a title to the easement by prescription; notwithstanding that the premises had remained unoccupied, during the whole period from 1822 to 1846, except by the plaintiff, that no notice had been given to him to cease occupying, and that no act had been done during that period by the owner of the land, indicating an intention to interrupt or disturb the plaintiff in his use of the premises; and that it would not be sufficient to entitle the plaintiff to a verdict, if the jury should be satisfied, that he had used and occupied the premises, for the purpose of laying logs, &c., thereon, for twenty years and upwards, during the period from the year 1822 to the year 1846, exclusive of the year or years omitted, unless the jury should believe that such omission had taken place in consequence of an abandonment of his claim by the plaintiff.

THIS action (which was tried before *Forbes*, J., in this court) was brought to recover damages for the interruption of an easement, which the plaintiff claimed in and upon a piece of land adjoining his mill yard in Berlin, for the purpose of laying thereon logs, lumber, and boards.

The defendants pleaded the general issue, with a specification of title to the land, upon which the easement was claimed, in the defendant Barnes.

The declaration contained three counts, the third of which was in trespass for breaking the plaintiff's close. The defendants moved to dismiss the action, on the ground, that the third count was not within the jurisdiction of the court. The plaintiff thereupon moved to amend the declaration, by striking out the third count. The defendant's motion was overruled, and the plaintiff's allowed.

The plaintiff claimed the easement in question on two grounds; first, by grant; and, secondly, by an adverse possession for more than twenty years. To establish the latter ground, the plaintiff introduced evidence, that, from the fall of 1822 to the fall of 1846, the premises had been used as a part of his mill yard, for the purpose of laying thereon the logs brought by his customers to be sawed at his mill.

The defendants introduced evidence tending to show, that during the time aforesaid the premises were not so used, and especially that during the years from 1829 to 1834, both inclusive, no logs, lumber, or boards were laid thereon; and they contended that if, during those years, no logs, boards, or lumber were laid upon the premises, there was an interruption of the use, which prevented the plaintiff from gaining a title by prescription.

The presiding judge instructed the jury, " that to gain a right by possession, the occupation must be adverse, that is, under a claim of title, with the knowledge and acquiescence of the owner of the land, uninterrupted and continued for twenty years; and as to what would be an interruption, the judge instructed the jury, in substance, that if the premises had remained unoccupied, except by the plaintiff, during the

whole period (1822 – 1846); and no notice had been given to him to cease occupying, and no act had been done, during that period, by the owners of the land, indicating an intention to interrupt or disturb the plaintiff in the use he was making of the premises; and if the plaintiff had used and occupied the premises for the purpose of laying logs, &c., for twenty years and upwards during that period, exclusive of the year or years omitted; his omission to place logs, &c., upon the premises during one or more years would not be such an interruption as to prevent the plaintiff from gaining a right by possession, unless the jury believed that the omission took place in consequence of an abandonment of his claim by the plaintiff."

The jury returned a verdict for the plaintiff, and the defendants thereupon alleged exceptions.

*B. F. Thomas*, for the defendants.

1. The third count being for a trespass to the plaintiff's close, of which, by the statute of 1840, *c.* 87, § 1, original and exclusive jurisdiction belongs to the court of common pleas, this court had no authority to allow the amendment; inasmuch as amendments can only be allowed where the court has jurisdiction. If the court had a discretion to allow, they might also have refused, the amendment. If the motion to amend had been disallowed, and upon the trial a general verdict had been given for the plaintiff, it could never have been known that the jury had not rendered their verdict upon the third count, of which the court had no jurisdiction, and the judgment must consequently have been arrested. Amendments are authorized by the statute (Rev. Sts. *c.* 100, § 22) when an action is pending; but in a case, in which the court has no jurisdiction, there is no action pending.

2. The defendants object to the instructions, which define an adverse use, as being opposed to the obvious construction of the Rev. Sts. *c.* 60, § 27. In order to constitute such a use, there must be a continuous occupation or possession for twenty years, accompanied and characterized by a claim of title or ownership. An adverse possession, the defendants

contend, may be broken by mere non-user. But the jury were instructed, that the omission to use the premises for one or more years would not break the continuity of possession, unless the omission was in consequence of an abandonment of the claim. They were also instructed, that if the plaintiff had used and occupied the premises for twenty years, within the period embraced by the evidence, exclusive of the years omitted, this would be sufficient. These two instructions were inconsistent. The omission was either an interruption or it was not. If it was an interruption, then the reckoning must begin anew from that time ; if it was not, then the time went on notwithstanding the omission ; and what would or would not constitute an interruption, was a question for the jury.

The defendants contend, further, that the omission to use the premises for four or six years was evidence of an abandonment, and that the jury should have been so instructed. The mere possession for twenty years will give a title by prescription, unless there is evidence of interruption. If possession is *prima facie* evidence of claim of title, the omission to possess must be equal evidence of abandonment of such claim. Gale & Whatley on Easements (Hammond's ed.), 79, 80 ; *Cross* v. *Lewis,* 2 B. & C. 686 & 4 D. & R. 234; *Gray* v. *Bond,* 2 B. & B. 667 & 5 J. B. M. 535. The effect of the instruction was, to put the burden of proof upon the defendant, to show the quality or character of the omission. The rule of law, upon which the right by prescription is founded, assumes that the party adversely interested acquiesces in the possession. But how can there be any such acquiescence, where there is an omission to possess ?

*F. H. Dewey,* (with whom was *C. Allen,*) for the plaintiff.

1. The defect in the declaration, by the insertion of a count in trespass, was cured by the defendant's appearance and pleading to the action. *Carlisle* v. *Weston,* 21 Pick. 535. The power of the court to allow amendments is broad enough to include the amendment in this case. Rev. Sts. c. 100, § 22 ; *St.* 1836, c. 273 ; *St.* 1837, c. 151 ; Rules of

the S. J. C. No. 66; *Prescott* v. *Tufts*, 4 Mass. 146; *Barker* v. *Burgess*, 3 Met. 273. If the amendment, in the present case, was unauthorized, then the absurdity will follow, that the court may be excluded from taking cognizance of an action which is within their jurisdiction, by reason of a matter which, not being within their jurisdiction, is therefore not properly before them.

2. The instructions relative to the nature of adverse possession and use seem to follow almost the very language of the Rev. Sts. *c.* 60, § 27. It is argued, that a temporary cessation of the use of the premises was evidence of an abandonment of claim by the plaintiff. The statute makes the acquisition of an easement, by an adverse use or enjoyment, depend upon such use or enjoyment being continued uninterrupted for twenty years. But it does not follow from this, that such use or enjoyment must be unintermitted. There may be an occasional intermission, without any necessary interruption of the use. The former may take place accidentally, and without any intention of abandonment, by the party claiming the easement; the latter must always be the act of the party against whom the right is claimed. The true principle is, that the use must be of such a nature, as to give notice to the party, that the easement is claimed against him. "It is not to be understood by this expression [uninterrupted], that the enjoyment of an easement must necessarily be unintermittent; although, in a great variety of cases, it would obviously be so; as in the case of windows, or rights to water." Gale & Whatley, 63. See also *Sergeant* v. *Bullard*, 9 Pick. 255; *Bolivar Man. Co.* v. *Neponset Man. Co.* 16 Pick. 241; *Melvin* v. *Whiting*, 13 Pick. 184; *Arnold* v. *Stevens*, 24 Pick. 106; *Hewin* v. *Burnett*, 11 Pet. 53; Co. Lit. 113 b; Gale & Whatley, 82. This subject is now regulated in England by the statute of 2 and 3 William IV., according to which an interruption to the use can only take place by means of some overt act.

3. It appears from the bill of exceptions, that the premises had been and were occupied by the plaintiff, as a part of his

mill yard. This negatives the idea of any separate enclosure by the defendants. The premises, then, may be regarded as open and unenclosed, and apparently left for the purpose of being used, as they were in fact used, with the mill. The case, therefore, is peculiar in this respect; and if the true prin‧ciple be, that the use is to be such merely as would naturally be made of the thing in question, under the circumstances, then, it would seem that the same strictness and continuity of occupation could not be required in the present case, as where the land was enclosed and in the actual occupation of the owner. In the latter case, it might be said, with truth, that while the claimant was not using, the owner was occupying, and thus asserting his right. In the former, the rule of common sense would be, that the mere temporary omission to use, without any evidence of abandonment by the claimant, should not be equivalent to an interruption by the act of the owner.

*Thomas*, in reply. The burden of proof was put upon the defendants to show an abandonment by the plaintiff when he omitted to use; whereas it should have remained upon the plaintiff to show an adverse and uninterrupted use by himself. When the plaintiff omitted his use, how could the defendants know that he intended at the same time to assert his claim to it? If the use had been continuous, the defendants might have been put upon their guard, and have taken the appropriate measures to prevent the plaintiff from acquiring a title by lapse of time. *Monmouth Canal Co.* v. *Harford*, 1 Cromp. M. & R. 614; *Tickle* v. *Brown*, 4 Ad. & Ell. 369, 383; *Beasley* v. *Clarke*, 2 Bing. N. C. 705. Rolle's Abr. Custom, C.

WILDE, J. At the trial, the defendants moved to dismiss the action, on the ground that the third count was in trespass for breaking the plaintiff's close, and so not within the jurisdiction of this court. This motion was overruled, and the plaintiff had leave to amend his declaration, by striking out the third count. That this motion was rightly overruled and the amendment allowed, is, we think, perfectly clear. The

only remaining question to be decided is, whether the instructions to the jury, as to the proof necessary to entitle the plaintiff to the easement claimed, were correct.

The plaintiff introduced evidence tending to show, that from the fall of 1822 to the fall of 1846, the premises in dispute had been used as part of his mill yard, and for the purpose of laying logs thereon by his customers to be sawed at his mill; and cotradictory evidence was introduced by the defendants, tending to prove that for six years during that time the premises were not thus used.

Upon this evidence, the jury were instructed, "that if the plaintiff had used and occupied the premises for the purpose of laying logs thereon, for twenty years during that period, exclusive of the year or years omitted, his omission to place logs upon the premises, during one or more years, would not be such an interruption as to prevent the plaintiff from gaining a right of possession, unless the jury believed, that the omission took place in consequence of an abandonment of his claim by the plaintiff."

It has been argued in support of these instructions, that although the enjoyment of an easement or privilege, in order to confer a title, must have been uninterrupted during the time required by law; yet, that a mere non-user of such easement or privilege is not to be considered as an interruption. And it is true, as laid down in Gale & Whatley's treatise on easements, "that in those easements which require the repeated acts of man for their enjoyment, as rights of way, it may be sufficient, if the user is of such a nature, and takes place at such intervals, as to afford an indication to the owner of the servient tenement, that a right is claimed against him."

But it is obvious, that the non-user in the present case does not come within this rule of law. The evidence tended to prove a total cessation of the enjoyment of the easement, and that for a long time; and the owner had good reason to believe, that the claim was abandoned; and if so, it seems immaterial whether the plaintiff had in fact abandoned his claim or not.

17 *

We think, therefore, that this is a case within the general rule as laid down in Gale & Whatley, p. 63, and which is supported by the authorities : — " The continuity of enjoyment," it is said, "may be broken, either by the cessation to use, or by the enjoyment not being had in the proper manner." And so the rule is laid down by lord Lyndhurst, and by Parke, B., in *Monmouth Canal Co.* v. *Harford,* 1 Cromp. Mees. & Rosc. 614, 631. Parke, B., says : " The issue is whether the occupiers of the closes of right, " (that is, claiming a right,) " without interruption, have had the use and enjoyment for twenty years, as they insist under this issue ; therefore they must show an uninterrupted enjoyment for twenty years. If they had enjoyed for one week, and not for the next, and so on alternately, their plea would not be proved." So lord Lyndhurst says : " The simple question is, whether there has been a continued enjoyment of the way for twenty years ; and any evidence negativing the continuance is admissible." The same principle of law is recognized in several subsequent cases. 4 Ad. & Ell. 383 ; 8 Ad. & Ell. 161 ; 2 Bing. N. C. 705. These cases were decided on the construction of the Stat. 2 & 3 Wm. 4, *c.* 71, which provides, that no claim for any right of way or other easement shall be defeated, when such way shall have been actually enjoyed by any one claiming right thereto, without interruption, for the full period of twenty years. A similar provision is contained in our Rev. Sts. *c.* 60, § 27 : that section provides, " that no person shall acquire any right or privilege of way, air, or light, nor any other easement, from, in, upon, or over the land of another, by the adverse use thereof, unless such use shall have been continued uninterrupted for twenty years."

The same continuity of possession was required by the common law, whereby a title by prescription could be acquired. " But both to customs and prescriptions," says lord Coke, " these two things are incidents inseparable, viz., possession or usage, and time. Possession must have three qualities : it must be long, continual, and peaceable ; *longa, continua, et pacifica :* for it is said (Bracton, fol. 51, 52) *trans-*

*feruntur dominia, sine titulo, et traditione, per usucaptionem, scil. per longam, continuam, et pacificam possessionem, longa, i. e. per spatium temporis per legem definitum,* of which here-after shall be spoken. *Continuam dico, ita quod non sit legitime interrupta. Pacificam dico, quia si contentiosa fuerit, idem erit quod prius, si contentio fuerit justa.* Co. Lit. 113 b.

Whatever breaks the continuity of the possession and en-joyment of an easement, whether by a cessation to enjoy it, or by any act of the owner of the servient tenement, destroys altogether the effect of the previous user; and this is an interruption within the meaning of the Rev. Sts. *c.* 60, § 27.

And we are all of opinion, both upon principle and author-ity, that the plaintiff cannot entitle himself to the privilege claimed, unless he can prove a continual enjoyment of it for twenty consecutive years, without interruption. Whether the privilege claimed is an easement, within the meaning of the statute and the law, is a question which has not been raised and discussed, and upon which we give no opinion.

*Exceptions sustained.*